## Noyer v. McGough

*Ronald J. Noyer,* pro se.

BRUMBAUGH, *J.,* November 12, 1981—Petitioner Ronald J. Noyer, as plaintiff in the above-captioned civil action, is suing his former court-appointed defense counsel on grounds of alleged ineffective representation, averring deprivation of his constitutional rights and seeking a recovery of monetary damages. The question for our determination is whether Mr. Noyer, an inmate of the State Correctional Institution at Huntingdon, is entitled to proceed in forma pauperis. We hold that he is not.

The Judicial Code, 42 Pa.C.S.A. §1725(a), as amended, provides:

"General rule.—The governing authority shall fix by general rule the filing fees for the commencement of any matter before any court . . . and the fees which clerks and officers serving process

. . . shall be entitled to collect for services performed. . . . In fixing fees the governing authority shall be guided by the following considerations: (1) The unified judicial system is established for the good order of society and the correction of injustice, and no person should have right and justice denied or delayed *by reason of poverty.*" (Emphasis supplied.)"

"Poverty" is undefined by the statute, but the language employed is indentical with that utilized in the former compulsory arbitration law, Act of June 16, 1836, P.L. 715, sec. 28, 5 P.S. §72, now repealed,[1] under which a judge could allow an appeal in forma pauperis from an arbitrators' award if "by reason of poverty, he [petitioner-appellant] is unable to pay the costs of the suit." From its retention of the same phrase in the current but broader enactment first above-cited, we presume that our state legislature intended the same interpretation to be given thereto as was applied to the earlier law by our appellate courts. See the Statutory Construction Act of 1972, 1 Pa.C.S.A. §§ 1922(4), 1921(c)(5).

In interpreting the use of the word "poverty" under the aforesaid arbitration statute in Gerlitzki v. Feldser, 226 Pa. Superior Ct. 142, 144, 307 A. 2d 307, 308 (1973), a 4-3 decision, *both* the majority and minority opinions had comments which are here most pertinent, the former observing that: "'Poverty" does not refer solely to a petitioner's 'net worth' but to whether he is able to obtain the neces-

---

1. See the Judiciary Act Repealer Act (JARA) of April 28, 1978, P.L. 202, sec. 2, effective June 27, 1978, 42 P.S. §20002(a)[149].

sities of life," and the latter pointing out in dissenting opinion of Jacobs, J., at p. 146:

"The following guidelines as to what constitutes poverty appears in 11 Standard Pennsylvania Practice 647 (1964): 'A party having property of value will not be allowed to take an appeal in forma pauperis, unless he can show that it is encumbered beyond its full value.' Furthermore, the court is vested with considerable discretion in examining the petition so that unworthy persons who are not indigent may not enjoy the privilege of appealing without payment of costs."

In citing with approval and confirmation its Gerlitzki holding, the Superior Court recently iterated the belief that a showing of "poverty" requires demonstration of a more depreciated, or worse, financial condition than merely being unable to pay the costs: Oppen v. Callahan, 282 Pa. Superior Ct. 282, 422 A. 2d 1117, 1118-1119 (1980); see also Davila v. Soto, 250 Pa. Superior Ct. 42, 378 A. 2d 443 (1977), allocatur refused.

Mr. Noyer certainly cannot claim that he is poverty-stricken under the aforementioned guidelines. The necessities of life-shelter and food, bed and board—have been provided for him by the taxpayers of this Commonwealth for at least the past seven years and may be so extended to him for some time to come.[2] Such provision is analogous to the receipt of regular public assistance payments

---

2. Petitioner was sentenced to 20 to 40 years of incarceration in Criminal Action nos. 1259 and 1260 of 1974 by this court.

by him[3] and is in addition to his admission of ". . .a monthly subsistence wage paid to me by the State for my use in purchasing necessities such as, soap, toothpaste, postage, stationery, pen & ink, and other necessities."[4]

Mr. Noyer makes no assertion of outstanding monetary obligations or indebtedness. In addition to having no mortgage payments, rental expenses or grocery bills to meet to cover his own maintenance and keep, he is also afforded medical and dental care by the Commonwealth—no mean consideration when we view the rising costs of health protection and insurance to the average person.

Over and above the basic "public assistance," subsistence wage and fringe benefits hereinbefore set forth, petitioner has a very real asset, albeit intangible. For the past several years he has engaged in that practice known in common parlance as "jailhouse law." Were his engagement therein but casual, at the very least this endeavor would undoubtedly yield for Mr. Noyer some of the luxuries of life, such as they may be in a captive environment, supplementing the necessities hereinbefore noted. It is well known, however, not only that he extends legal assistance in the form of advice and in the preparation of petitions and various documents to other inmates, but also that he so holds himself out, in concert with fellow convict Ancel Ham, under the letterhead designation of

3. The actual annual cost to the taxpayers to maintain an inmate in a state institution far exceeds the maximum regular public welfare benefits payable to an individual per year.

4. See paragraph 6 of the application attached to plaintiff's complaint.

"Ham & Noyer, Para-Legals at Law."[5] This practice is, therefore, not simply an avocation but an occupation—in other words, Mr. Noyer runs a business.

It would be naive to assume that these services are rendered gratuitously; to the contrary we may presume that something is given in return and that, whatever the quid pro quo may be,[6] it is susceptible to reduction or conversion into monetary terms. Consequently the mere fact that petitioner

---

5. See attached August 18, 1981 letter from plaintiff to Blair County's Assistant District Attorney Frank J. Hartye.

EXHIBIT
Ham & Noyer
Para-Legals at Law
Drawer R
Huntingdon, Pennsylvania 16652

Ancel Ham
Ronald J. Noyer

August 18, 1981

Mr. Frank J. Hartye, Esq.
District Attorney's Office
Blair County Courthouse Annex #1.
Hollidaysburg, Penna., 16648          Civil Action No. 81-1055

Dear Mr. Hartye,

Enclosed is a copy of the Objection to the Magistrate's Report and Recommendation also is a copy of the Certificate of Service to show that a copy has been served on you as the rule demands.

> Very truly yours,
> (signature)
> Ronald J. Noyer,
> petitioner, pro se

cc: file

6. We understand that the actual exchange may take a myriad of different forms—favors, services and/or tangible items of worth.

may have no funds to his credit "on the books of the institution" or deposited in a prison account does not mean that moneys are unavailable to him. We entertain no doubt that Mr. Noyer's interest in or co-ownership of the indicated firm constitutes, in the true sense, unencumbered "property of value."

In support of the foregoing determination we note the prodigious amount of correspondence which flows from petitioner just on his own behalf and that he always seems to have sufficient funds to *prepay* any special mailing charges involved. This judge alone, in addition to various regular mailings by petitioner, is in receipt of a June 16, 1981 certified letter the posting of which cost Mr. Noyer $2.53. Moreover, petitioner was able to *advance* the following certified, restricted delivery mailing costs in order to forward a habeas corpus petition and to secure service thereof in the matter of Noyer v. Com., filed September 28, 1981 to No. 1758 C. P. 1981 in this court[7]: $4.33 for posting the original to our clerk of courts and $3.31 apiece for the respective postings of copies to this judge and to the Blair County District Attorney, or a total expense of $10.95[8]. We do not believe that such amounts are either contemplated or covered by the

---

7. This habeas corpus petition was found meritless and was dismissed by opinion and order of this judge dated October 26, 1981.

8. The original manila envelopes in which the petition and this judge's copy thereof were forwarded have been respectively preserved in the prothonotary's file and this judge's personal record; we presume the mailing cost of the district attorney's copy was comparable to the charge of posting to the court.

postage allotment of Mr. Noyer's monthly subsistence wage, but rather we find them made possible through supplemental income. Thus we cannot accept that he is unable to meet the $20 filing and $13.50 service fees which our prothonotary and sheriff statutorily require respectively to institute and effect process in this civil suit.

This is not a case wherein petitioner has attached or could attach a confirming financial statement to a petition asserting that his monthly expenses exceed his income, which allegations, coupled with a minimal net worth, could constitute a prima facie showing of impoverishment. See Thompson v. Garden Court, Inc., 277 Pa. Superior Ct. 460, 419 A. 2d 1238 (1980). Ordinarily an evidentiary hearing on an alleged pauper's financial condition is required, with summary dismissal of the petition being improper: Oppen v. Callahan, supra; Thompson v. Garden Court, Inc., supra. This mandate, however, is based upon an initial veracity accorded a petition's specific factual averments; here the averments are not only too general and conclusory, but also we find Mr. Noyer's failure to refer to his "legal" or "para-legal" activities in the petition an intentional and significant omission. Moreover, no inference of credibility is given in the first instance because of petitioner's felony convictions before this court for crimen falsi on April 8, 1975—two guilty jury verdicts for armed robberies respectively returned to Criminal Action nos. 1259 and 1260 of 1974.

One seeking to proceed in forma pauperis has an "affirmative burden of proving not only his present inability to pay the . . . costs but also his poverty:" Oppen v. Callahan, supra, at p. 286. ". . . [T]he burden of satisfying the lower court of the truth of averments of indigency is upon the person asserting that status." Moskol v. Moskol, 247 Pa. Superior

Ct. 181, 184, 371 A. 2d 1387, 1389 (1977). We are sure that Mr. Noyer maintains no business ledgers, books of account or other records which would shed light on his financial situation. No hearing should be held where its result as a vain and unproductive undertaking is apparent.

Under all of the circumstances we can see no justification for excusing petitioner, who prays for awards of $150,000 in damages, from paying the $33.50 in filing and service costs necessary to pursue this action.

Accordingly we enter the following

## ORDER

And now, November 12, 1981, plaintiff's petition for leave to proceed in forma pauperis in the above-captioned action is denied and refused without hearing.